In the matter of the Petition of ELLEN B. TOMLINSON, for assignment of dower.

*Kent, Sept.* 19, 1911.

A judgment debt incurred by a man prior to his marriage, and paid during his lifetime, cannot be considered in assigning dower to his widow, and her rights cannot be diminished thereby.

A vendor of an undivided interest in land to his co-tenant may not, as against the dower right of the widow of the co-tenant, enforce a vendor's lien for the unpaid price.

A purchaser at an execution sale is a lienor of the debtor, within the rule that in assigning dower the widow is entitled to have considered the enhanced value of the land arising from the increased prosperity of the country and the improvements in the neighborhood; but the assignment must be made according to the condition of the land at the time of the

sale, independent of the improvements erected thereon at the expense of the purchaser subsequent to his purchase.

Land of a married man was sold by the Sheriff in execution of a judgment against him obtained after his marriage for a debt of his contracted before marriage. *Held:*

(1) That the purchaser is regarded as an alienee of the husband.

(2) That in assigning dower to the widow of the execution debtor the present value of the land should be considered, but according to the condition thereof at the time of the Sheriff's sale, and that the improvements since said sale should not be considered.

Freeholders, appointed to assign dower, may not, as witnesses, contradict on exceptions their award regular on its face and showing a full compliance with the order of the Court, and testify that the statements in their return were not true in the absence of an allegation of fraud or gross error.

PETITION FOR ASSIGNMENT OF DOWER. By her petition, Ellen B. Tomlinson, widow of Daniel R. Tomlinson, deceased, alleged that her husband, after marriage, became siesed of a farm in Milford Hundred, containing about one hundred and sixty-six and one-half acres, and that on August 29th, 1863, the farm was sold by the Sheriff on a writ of *venditioni exponas* issued on a judgment in favor of James Cook, for the use of Joseph Hill, against her husband, Daniel R. Tomlinson. The judgment was for a debt of the husband, contracted after the marriage. On March 11th, 1911, the husband of the petitioner died, and the 'and having become the property of William B. Tomlinson, an assignment of dower by metes and bounds was asked for.

By the answer of William B. Tomlinson, the marriage of the petitioner to Daniel R. Tomlinson was denied, but at the hearing it was shown that they were married in 1855. It appeared further, that before the marriage Daniel R. Tomlinson gave to Stephen C. Boone a bond, dated May 1st, 1853, for $279.34, on which judgment was entered after the marriage at the October term, 1856. The next lien on the land was a judgment against Daniel R. Tomlinson for $2,500, entered on January 27th, 1859, on a bond given by Daniel R. Tomlinson to William B. Tomlinson, dated January 25th, 1859. This latter

bond was alleged in the answer to have been given to secure payment of the price of an undivided one-half interest in the farm, which undivided interest by deed dated January 25th, 1859, William B. Tomlinson conveyed to Daniel R. Tomlinson, they being then tenants in common thereof. It was claimed that when the property was sold by the Sheriff in 1863 on a judgment of Cook, which was the third lien, the proceeds of sale were not sufficient to pay the judgment given for the purchase money by about $400, and that this should be considered in assigning dower, William B. Tomlinson claiming a vendor's lien to that amount. By the answer it was further alleged that in 1863 the value of the farm did not exceed $3,210, the price at which it was then sold; that since then the farm had been improved; and that certain new buildings had since been erected thereon by the present owner, against whom the dower is sought.

The petition and answer were set down for hearing before Chancellor CURTIS and Judge BOYCE in the Orphans' Court on September 19th, 1911, and the testimony of witnesses was then heard.

*James M. Satterfield* and *Caleb S. Layton*, for petitioner. *James H. Hughes*, for defendant.

CURTIS, Ch. (delivering the opinion of the Court): After having heard the testimony of witnesses on the allegations of the petition and answer, the Court find that the petitioner Ellen B. Tomlinson and David R. Tomlinson were married in 1855, and that Daniel R. Tomlinson died on March 11th, 1911, forty-eight years after the sale of the farm by the Sheriff. The questions raised were three: (1) Whether in assigning dower by metes and bounds the freeholders should consider the debt due from Daniel R. Tomlinson to Boone, represented by the bond for $279.34, dated prior to the marriage. (2) Whether they should consider the claim of William B. Tomlinson to a vendor's lien for the unpaid part of the price of an undivided interest in the farm purchased by him from Daniel W. Tomlinson subsequent to the marriage. (3) What improvements had been added to the farm since the Sheriff's sale and in the lifetime of Daniel R. Tomlinson?

1.   Inasmuch as the bond of Boone was paid in the lifetime of Daniel R. Tomlinson, and therefore was not a debt due from him at the time of his death, it is not to be considered in assigning dower, and the widow's right of dower is not to be diminished thereby, or to the extent thereof.   *Griffin v. Reece*, 1 *Harr.* 508.

2.   William B. Tomlinson is not entitled to enforce as against the widow's right of dower a claim for a vendor's lien to the extent of the unpaid portion of the undivided interest in the farm bought by him from Daniel R. Tomlinson.   The right of a vendor to enforce a lien for the unpaid purchase money has not been established in Delaware, but whenever the question has arisen the tendency of the Courts here have been against it.   *Budd, et al. vs. Busti, et al.*, 1 *Harr.* 69; *Cannon v. Hudson*, 6 *Houst.* 21; *Godwin v. Collins*, 3 *Del. Ch.* 189; *Rice v. Rice*, 36 *Fed.* 858.

3.   In this State the respective rights of the widow and the alienee of the husband, respecting the improvements on the land made by the alienee after alienation and during the life of the husband, are settled by decisions.   The purchaser of land of the husband, sold by the Sheriff after marriage on an execution against the husband, is regarded as an alienee of the husband.   *Green v. Tennant*, 2 *Harr.* 336, 339.   In assigning and estimating dower, the widow is entitled to have considered the enhanced value of the land arising from the increased prosperity of the country and the improvements in the neighborhood.   *Green v. Tennant, supra.*   But the assignment should be made according to the condition of the land at the time of the sale by the husband, independent of the improvements erected or produced thereon at the cost and expense of the purchaser subsequent to the purchase.   *Green v. Tennant, supra; Rawlins v. Buttel*, 1 *Houst.* 224.   By the proofs the character of the buildings and improvements so erected by the purchaser were shown, and the order for the assignment will contain a statement thereof, as well as instructions in accordance with the conclusion of the Court.

ᵘ The following order was made:

"And now, to wit, this nineteenth day of September, A. D. 1911 the foregoing petition of Ellen B. Tomlinson, widow of Daniel R. Tomlinson, deceased, for assignment of dower in the lands and tenement whereof the said Daniel R. Tomlinson was seised in his lifetime, and the answer of William B. Tomlinson, the defendant and present owner of said lands and tenements, having come on to be heard by the Judges of the said Orphans' Court, and the oral testimony of witnesses produced by the parties in said cause having been duly considered by the Court;

"And it appearing to the Court that the petitioner, Ellen B. Tomlinson, and the said Daniel R. Tomlinson were duly married in the year 1855; that the said Daniel R. Tomlinson in his lifetime, during said marriage was seised in his demesne as of fee and in a tract of land in said petition mentioned, except the said tract of seven acres and ninety perches situated on the north side of the public road in said answer mentioned; that since the alienation of said tract of land by the sale thereof by the Sheriff on the twenty-ninth day of August, A. D. 1863, certain improvements have been erected thereon, namely, the dwelling house, barn and wagon shed, corn crib, chicken house and cow house;

"It is, therefore, ordered, adjudged and decreed by the Court that a commission shall issue directed to Robert H. Lewis, Gilder D. Jackson, John W. Caulk, William G. Postles and William Denney, five judicious and substantial freeholders of Kent County, directing them to assign dower to said Ellen B. Tomlinson, widow of the said Daniel R. Tomlinson, out of the said premises in said petition mentioned, excepting as aforesaid, according to the condition thereof at the time of the sale thereof on the said twenty-ninth day of August, A. D. 1863, and according to the present value thereof, and that in determining the present value thereof the said freeholders shall not consider the said improvements erected on said lands and premises since the said sale, namely, the said dwelling house, barn and wagon shed, corn crib, chicken house and cow house;

"And further, that they make return of their proceedings to this Court at Dover, at the adjourned term thereof, to be held on the seventh day of October, A. D. 1911."

In accordance with the foregoing order, the freeholders made return of their proceedings, to which exceptions were taken by William B. Tomlinson. The following opinion, which was delivered on November 4th, 1911, contains a sufficient statement of the exceptions.

CURTIS, Ch. (delivering the opinion of the Court): The freeholders having made return under the order for the assignment of dower, the defendant, William B. Tomlinson, filed

exceptions to the award, which were of three kinds: (1) That the freeholders did not view the premises. (2) That they did not value the land in accordance with the order. (3) That the assignment was inequitable in amount.

At the hearing of the exceptions, the only witnesses produced were the freeholders, and objection was made to them as not competent witnesses to attack their own award, which was regular on its face and showed a full and particular compliance with the order of the Court. Without argument the Court declined to hear the testimony of the freeholders to contradict the award, and show that the statements in their return were not true, the return showing full compliance with the order of the Court for the assignment of dower. The Court said that it was an unwise and unsafe proceeding to permit the freeholders, who were under oath, to deny what they had done, in the absence of allegations of fraud, or gross error. The decisions of the courts of the State are conflicting as to whether arbitrators, or referees, are to be admitted to testify on exceptions to awards. In the following cases cited in 1 *Del. Ch.* 381, *et seq.*, as notes to *Beeson v. Elliott*, the Court refused to hear the testimony of referees on exceptions to an award: *Crain v. Lowber*, in the Supreme Court in 1804; *Spruance v. Poovy*, Supreme Court, 1829.

In *Bailey v. England*, 1 *Pennewill* 12, 14, 39 *Atl.* 455, where on exceptions to an award an offer was made to show by one of the referees that he had not understood certain matters connected with the case, Judge Grubb said:

"This is a case in which first thoughts will have to be best; referees' second thoughts after rendering their award will not do."

In other cases cited in the notes to *Beeson v. Elliott*, *supra*, it appears that the arbitrators were examined as witnesses, but whether after objection or by consent does not appear. *Miers v. Speer; McKinley v. Reynolds*. And in one other case, *Hudson v. McDonough*, 1 *Del. Ch.* 381, note, an arbitrator was examined without objection. In *Allen v. Smith's Adm'r.*, 4 *Harr.* 234, the Court held, over objection, that an arbitrator was a competent witness on exceptions to an award to prove

the facts submitted to them and the grounds of their award.

In view of this contrariety of views, this Court in this proceeding considers that the better and safer plan is to exclude the freeholders as witnesses to contradict or vary their own report in the absence of fraud. It does not seem wise to permit a commissioner to testify that statements in the return which he has signed are not true, in absence of some allegation of fraud, or gross error.

The return will be confirmed and approved.